UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: ANTONIO RODRIGUEZ,

       Debtor.
_____/

STUART GOLD, TRUSTEE FOR THE
ESTATE OF JOSE ANTONIO RODRIGUEZ,

       Appellant,                     Bkrptcy No. 04-47510-PJS
                                          Adversary No. 05-5149-PJS
                                          HON. PHILLIP J. SHEFFERLY
vs.                                               Case No. 05-CV-74737
                                          HON. GEORGE CARAM STEEH

FEDEX FREIGHT EAST, INC.,

       Appellee.
_____/

ORDER AFFIRMING BANKRUPTCY COURT'S
DECEMBER 1, 2005 OPINION GRANTING FEDEX'S
MOTION FOR SUMMARY JUDGMENT

     Antonio Rodriguez appeals the Bankruptcy Court's December 1, 2005 Opinion granting appellee Fedex Freight East, Inc's ("Fedex") motion for summary judgment as to Rodriguez's claims of race discrimination and retaliation in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L. § 37.2101 et seq.. Oral argument is unnecessary. See Fed. R. Bank. P. 8012; E.D. Mich. Local R. 7.1(e)(2). It is ORDERED that the appeal be resolved without oral argument.

**I. Background**

     The procedural posture of this case is detailed in the Bankruptcy Court's December 1, 2005 Opinion, at 2-7. Fedex's motion for summary judgment was before the Bankruptcy Court on referral from this court. See In re Rodriguez, No. 05-71657 (E.D.Mich. June 13,

2005) (denying Fedex's motion to withdraw reference). Rodriguez resigned from his position as a Fedex truck driver, effective August 1, 2003, indicating in a July 30, 2003 resignation letter that Fedex had refused to address his numerous complaints of Hispanic-American race discrimination. The Bankruptcy Court granted Fedex's motion for summary judgment of Rodriguez's ELCRA claims of a racially hostile work environment, disparate treatment, retaliation, and constructive discharge on concluding that Rodriguez failed to proffer direct evidence of race discrimination, and failed to proffer sufficient indirect evidence of a failure to promote based on Rodriguez's Hispanic-American race, a causal connection between Rodriguez's complaints of race discrimination and his failure to receive a promotion, a racially hostile work environment, or working conditions so severe as to compel Rodriguez's resignation.

## II. Standard of Review

A district court applies a clearly erroneous standard to a bankruptcy court's findings of fact, and plenary de novo review as to questions of law. See In re Charfoos, 979 F.2d 390, 392 (6th Cir. 1992). Federal Rule of Civil Procedure 56(c) empowers a court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable

inferences must be construed in a light most favorable to the non-moving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Redding</u>, 241 F.3d at 532 (6th Cir. 2001). If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 270 (1968); <u>see</u> <u>also</u> <u>McLean v. 988011 Ontario, Ltd.</u>, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. <u>Anderson</u>, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. <u>McLean</u>, 224 F.3d at 800 (citing <u>Anderson</u>, 477 U.S. at 252).

## III. Analysis

Despite repeated attempts by defense Counsel to take Rodriguez's depostion, Rodriguez was never examined under oath. Rodriguez deposed no witnesses, and his proffered evidence consists exclusively of affidavits.

Rodriguez attests that: he "worked as a truck driver, dispatcher, and served as a representative of Fed Ex's safety committee"; many of his co-workers and his immediate supervisor Jon McKibbon "said I would make a good supervisor and urged me to apply for a supervisory position"; Rodriguez informed Fedex Human Resource ("HR") Manager Rodney Adkinson in June 2002 that he wanted to become a supervisor; Adkinson told Rodriguez that he "must take leadership courses . . . on my own time"; Rodriguez learned that non-Hispanic employees were allowed to take courses on company time; Rodriguez took courses and was able to operate a computer; three supervisory positions became vacant while Rodriguez "was taking courses," and Adkinson told him he "would not be

3

considered because I needed to take more courses"; two of the three vacant supervisory positions were filled by non-Hispanic Fedex employees and one position was filled "by a White new hire off the streets"; Fedex employee Jim Johnson, a Caucasian chosen for one of the positions, "had never taken any LAC courses, could not operate a computer and had no previous supervisory experience"; Rodriguez was "interviewed twice by [M]anager McKibbon for a supervisor's position but was not selected," with McKibbon telling Rodriguez that if Adkinson "had not told him not to promote [Rodriguez] he would have selected me for the supervisor's job"; Fedex Manager Dale Williams told Rodriguez "on numerous occasions he ha[d] heard Mr. Adkinson make ethnically derogatory remarks about [Rodriguez] in the presence of others and stated that he would not allow [Rodriguez] to become a supervisor at FedEx because of [Rodriguez's] Hispanic speech pattern and accent"; whenever Rodriguez asked Adkinson to be considered for a supervisor's position, Adkinson gave him the "run-around" by saying "keep taking classes" without telling Rodriguez "how many courses I needed to complete"; after Rodriguez "told Mr. Adkinson that I believed I was being unfairly denied a supervisor's position, [Adkinson] retaliated by giving the next vacancy to another non-Hispanic"; Rodriguez "complained to [M]anagers Craig, Colette and Jason about Mr. Adkinson's discriminatory treatment of me on numerous occasions [and] FedEx not only ignored my complaints but retaliated by refusing to promote me despite my qualifications"; Rodriguez complained to Adkinson's boss John Ravenille, with Ravenille "respond[ing] as though I should ignore Mr. Adkinson"; and Rodriguez submitted his resignation letter "only after it became clear that Mr. Atkinson and FedEx would not ever allow me to become a supervisor because I was Hispanic [and] I could not endure the retaliation, embarrassment, humiliation and ridicule any longer."

    In further support of Rodriguez's ELCRA claims, former Fedex Customer Service

4

Manager Jon McKibbon attests that: Rodriguez "applied for the vacant supervisory position and was interviewed on two occasions and I was of the opinion he was qualified to be a supervisor"; McKibbon did not promote Rodriguez to the supervisor position because HR Manager Adkinson "said he was concerned about [Rodriguez's] accent, speech pattern and capability to move up the company," with Adkinson making these statements to McKibbon on "several occasions in my office"; McKibbon "had no problems with [Rodriguez's] accent or speech pattern"; McKibbon "did not receive any serious complaints" about Rodriguez's "speech pattern or his Hispanic accent"; and the "supervisor position remained open for approximately 6-8 weeks."  Former Fedex Manager Dale Williams attests that: when he asked Adkinson in a weekly management meeting about promoting Rodriguez to a vacant supervisor position, Adkinson commented that Rodriguez "is a good worker and could some day move into management," but "because of [Rodriguez's] 'language' and 'how he speaks,' people would have a hard time understanding him"; Williams found these comments "shocking, offensive and discriminatory," and when Williams asked Adkinson whether that was the only reason for not promoting Rodriguez, Adkinson responded "pretty much"; Rodriguez at times "worked in Dispatch answering the telephones"; and Williams never received any complaints about Rodriguez's speech or language.  Rodriguez's former co-employee Kelly Scrimenti attests that: Rodriguez told her he was told by someone that he was not offered a supervisory position "because they could not understand him when he talked," although Scrimenti also attests she did not hear the statement being made to Rodriguez; Rodriguez told her he found the statement to be "discriminating to him"; and Scrimenti overheard Ravenille ask Rodriguez whether Rodriguez thought the speaker "meant it that way."

 Michigan's ELCRA prohibits an employer from discharging or otherwise

5

discriminating against an individual with respect to a term, condition, or privilege of employment because of race. M.C.L. § 37.2202(1)(a). An employer is also prohibited from retaliating against a person because the person has opposed an ELCRA violation. M.C.L. § 37.2701(a). Race discrimination in violation of the ELCRA may be proven using direct or indirect evidence. Hazel v. Ford Motor Co., 464 Mich. 456, 462-63, 628 N.W.2d 515 (2001). "Direct evidence" is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Id. at 462 (quoting Jacklyn v. Schering-Plough Healthcare Products Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999)). "Indirect evidence" is evidence which would permit a reasonable jury to "*infer* that the plaintiff was the victim of unlawful discrimination." Id. at 462 (emphasis in original) (quoting DeBrow v. Century 21 Great Lakes, Inc. (After Remand), 463 Mich. 534, 537-38, 620 N.W.2d 836 (2001)). On summary judgment, and in the absence of direct evidence, indirect evidence of discrimination is analyzed under the familiar three-part McDonnell Douglas[1] approach: (1) the plaintiff is required to present a prima facie case; (2) the defendant is given an opportunity to articulate a legitimate reason for its actions in rebuttal of the prima facie case; and (3) if the defendant articulates a legitimate reason, the plaintiff is required to present evidence sufficient to permit a reasonable juror to find that unlawful discrimination was a motivating factor for the adverse action taken by the defendant. Hazel, 464 Mich. at 462-66.

### A. Direct Evidence of Discrimination

Rodriguez argues that Adkinson's alleged comments about Rodriguez's Hispanic accent and speech pattern constitute direct evidence of race discrimination, requiring the conclusion that unlawful race discrimination was a motivating factor in Fedex's decision not

---

[1] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

6

to promote Rodriguez to a supervisory position. The court disagrees. An adverse employment action may lawfully be predicated upon an individual's accent if it would materially interfere with communication skills that are reasonably related to the job's performance. See Fragante v. City and County of Honolulu, 888 F.2d 591, 596-97 (9th Cir. 1989). Statements attributed to Adkinson by Rodriguez do not compel a finding of unlawful discrimination in as much as a reasonable juror could conclude that his alleged comments about Rodriguez's accent and speech pattern constituted a legitimate concern about Rodriguez's communication skills; Adkinson's alleged reference to Rodriguez's Hispanic accent likewise does not compel a finding of race discrimination. Indeed, each of the cases relied upon by Rodriguez construed references to an employee's or applicant's accent as potential indirect evidence of discrimination under the McDonnell Douglas approach. See Berke v. Ohio Dept. of Public Welfare, 628 F.2d 980, 981 (6th Cir. 1980) (affirming district court's application of McDonnell Douglas standards and finding that employee was unlawfully denied two promotions because of her Polish accent which flowed from her national origin); Carino v. University of Oklahoma Bd. of Regents, 750 F.2d 815, 818-19 (10th Cir. 1984) (affirming district court's application of McDonnell Douglas standards and finding that employee was unlawfully denied promotion because of her Filipino national origin and related accent); Fragante, 888 F.2d at 593, 595, 598 (affirming district court's application of McDonnell Douglas standards and finding that job applicant was not unlawfully denied employment on basis of heavy Filipino accent).

  Rodriguez's reliance on Harrison v. Olde Financial Corp., 225 Mich. App. 601, 572 N.W.2d 679 (1998) for the proposition that "racial slurs" constitute direct evidence of unlawful discrimination is misplaced in the absence of any evidence that Fedex or one of its agents used a racial slur. Rodriguez's attestations that Manager Williams told him he

had heard Atkinson "make ethnically derogatory remarks" about Rodriguez which Williams found "shocking, offensive and discriminatory" are conclusory opinions insufficient to create a genuine issue of fact.  See Sperle v. Michigan Dept. of Corrections, 297 F.3d 483, 495 (6th Cir. 2002) (setting forth Rule 56(e) requirement that affidavits contain "such facts as would be admissible as evidence"); Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999) (finding inadmissible lay witness's opinion of unlawful discrimination in workplace on failure to comply with Federal Rule of Evidence 701 requirement that opinion be rationally based on the perception of the witness).  Rodriguez has not shown that Williams' lay opinions are factually or rationally based.  Compare Harrison, 225 Mich. App. at 604, 610 (recognizing as admissible African-American plaintiff's testimony that decision-maker stated that "although plaintiff was a good secretary, she was 'the wrong color'," and that personal director told interviewer "he should not permit plaintiff to address him by his first name because plaintiff was black").  Rodriguez has not proffered direct evidence to support any of his ELCRA claims.

### **B. Indirect Evidence of Discrimination**

#### i. Failure to Promote/Disparate Treatment

To support a prima facie case of race discrimination based on a failure to promote, the ELCRA plaintiff is required to present evidence that: (1) he is a member of the protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) the job was given to another person under circumstances giving rise to a reasonable inference of discrimination. Hazel, 464 Mich. at 463.  If the employer responds with evidence of a legitimate reason for failing to promote the plaintiff, the presumption of discrimination created by the prima facie case drops away, and the plaintiff is left with the burden of demonstrating that the record evidence is sufficient to allow a reasonable

inference of unlawful discrimination. Id. at 465. The plaintiff "must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for unlawful discrimination." Id. at 465-466 (quoting Lytle v. Malady (On Rehearing), 458 Mich. 153, 176, 579 N.W.2d 906 (1998)).

Rodriguez failed to come forward with sufficient evidence to show that he suffered the adverse employment action of being denied a promotion, that he was qualified for a supervisory position, or that a supervisory position was given to another person under circumstances giving rise to a reasonable inference of race discrimination. Rodriguez thus failed to establish elements two, three, four of a prima facie case. Hazel, 464 Mich. at 463.

### *a. Denial of Promotion*

Rodriguez filed his own sworn attestation that he was "interviewed twice by [M]anager McKibbon for a supervisor's position but was not selected," and McKibbon's sworn statement that Rodriguez "applied for the vacant supervisory position" and that McKibbon did not promote Rodriguez because Adkinson "said he was concerned about [Rodriguez's] accent, speech pattern and capability to move up the company." However, Rodriguez does not dispute Adkinson's attestation that "Rodriguez never submitted any formal applications for any job positions during his tenure with FedEx." Also, Rodriguez does not proffer evidence or argument that McKibbon, as his immediate supervisor, had the decision-making authority to promote Rodriquez to the position of fellow supervisor. Williams' attestations as proffered by Rodriguez support a finding that Rodriguez did *not* apply for a supervisor position in that Williams attests he asked Adkinson about Rodriguez after Adkinson "said he had interviewed a few people but none were qualified." Inquiries by plaintiff about possible promotion opportunities do not amount to an application. It is beyond reasonable dispute that Rodriguez never applied for a supervisory position with

Adkinson or other Fedex decision-maker. The Bankruptcy Court clearly erred in finding that Rodriguez in fact applied for a supervisor position.

Indeed, Rodriguez now argues on appeal that it would have been futile for him to apply for a supervisor position after McKibbon told him Adkinson "was concerned about [Rodriguez's] accent, speech pattern and capability to move up the company." To establish futility, Rodriguez was required to proffer evidence that he would have applied for a supervisory position but for the alleged unlawful discriminatory practice, and that his application would have been rejected for unlawful discriminatory reasons. See McEwen v. MGM Grand Detroit, No. 03-73039, 2006 WL 83476, at *10 (E.D. Mich. Jan. 10, 2006) (citing International Brotherhood of Teamsters v. United States, 431 U.S. 324 (1977)).

> Individual nonapplicants must be given an opportunity to undertake their difficult task of proving that they should be treated as applicants and therefore are presumptively entitled to relief accordingly. . . .
>
> A nonapplicant must show that he was a potential victim of unlawful discrimination. Because he is necessarily claiming that he was deterred from applying for the job by the employer's discriminatory practices, his is the not always easy burden of proving that he would have applied for the job had it not been for those practices. . . .

Mitchell v. Mid-Continent Spring Co. of Kentucky, 583 F.2d 275, 283 (6th Cir. 1978) (quoting Teamsters, 431 U.S. at 364, 367-368).

> . . . The known prospect of discriminatory rejection shows only that employees who wanted [promotions] may have been deterred from applying for them. It does not show which of the nonapplicants actually wanted such jobs, or which possessed the requisite qualifications. [FN 53]
> _____
> FN53. Inasmuch as the purpose of the nonapplicant's burden of proof will be to establish that his status is similar to that of the applicant, he must bear the burden of coming forward with the basic information about his qualifications that he would have presented in an application. . . . . [T]he burden then will be on the employer to show that the nonapplicant was nevertheless not a victim of discrimination. For example, the employer might show that there were more other, more qualified persons who would have been chosen for a particular vacancy, or that the nonapplicant's stated qualifications were

insufficient.

Teamsters, 431 U.S. at 369-70 (internal citation omitted).

Rodriguez's futility argument rests on McKibbon's attestation that he told Rodriguez that Adkinson was "concerned about [Rodriguez's] accent, speech pattern and ability to move up the company," and that Adkinson told Rodriguez he would not be considered for a supervisor position because he needed to take more leadership courses on his own time. Rodriguez's commentary that he learned unnamed non-Hispanic employees were permitted to take courses on company time is conclusory in the absence of any factual basis, and thus fails to support an inference of unlawful disparate treatment. Sperle, 297 F.3d at 495; Jacklyn, 176 F.3d at 926. Williams does not attest that he told Rodriguez about his conversation with Adkinson. Adkinson attests:

> 9. I personally recommended that Rodriguez be considered for FedEx's Leadership Apprentice Course ("LAC"), and, subsequently, FedEx enrolled Rodriguez in its LAC. The LAC is a prerequisite for any promotion to the supervisor level, absent previous unique circumstances, such as prior experience in the position in an acting capacity, which Rodriguez did not have. Rodriguez never completed the LAC, despite repeated attempts from FedEx to encourage him to do so.
>
> \*       \*       \*
>
> 11. To my knowledge, Rodriguez was never considered for any supervisory position. I did not consider him for any promotion due to his lack of commitment to the LAC. . . . .

Adkinson Affidavit, ¶¶ 9, 11[2]. Rodriguez's attestations confirm that he did not complete the LAC courses, contrary to Adkinson's advice:

> 7. During the time I was taking courses, at least three supervisor positions became vacant. Mr. Adkinson said I would not be considered because I needed to take more courses. Two were filed by non-Hispanic employees,

---

[2] The parties' each challenge the technical sufficiency of the opposing parties' affidavits. To reach the merits of Rodriguez's claims, the court assumes the parties would each be able to correct the technical flaws in their proffered affidavits on re-submission.

11

> and the other was filled by a White new hire, off the streets. One of the employees selected was Jim Johnson. He was White and had never taken any LAC courses, could not operate a computer and had no previous supervisory experience.

Rodriguez Affidavit, ¶ 7.

Rodriguez further argues that Fedex's hiring of Jim Johnson "off the streets," without the benefit of LAC courses, the ability to operate a computer, or prior supervisory experience, creates a question of fact as to whether the completion of LAC courses was a bona fide supervisor requirement. The court disagrees. Johnson's failure to take LAC courses before being hired by Fedex as a supervisor raises no reasonable inference of race discrimination in the absence of evidence that LAC courses were available to individuals that were not yet Fedex employees. Adkinson attests that the completion of LAC courses "absent previous unique circumstances" is a prerequisite for any "*promotion* to the supervisor level," not a prerequisite for a new hire "off the streets." It would make little sense for Fedex to require individuals seeking to be *hired* by Fedex to complete Fedex's LAC courses before they would be considered as qualified to apply. Johnson's status as a new hire is dissimilar to Rodriguez's status as a Fedex employee, and therefore Johnson's hiring without ever having "taken any LAC courses" does not raise a legitimate inference of a disingenuous supervisor requirement used to advance a discriminatory practice. See Ercegovich v. Goodyear Tire and Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (holding that an inference of unlawful disparate treatment may arise in comparing similarly situated individuals sharing "all of the relevant aspects" of employment). Rodriguez does not attest that the two unnamed "non-Hispanic employees" *promoted* to supervisor positions failed to complete LAC training, nor did Rodriguez proffer evidence that Johnson did not possess LAC equivalent leadership skills by way of "unique

12

circumstances" other than prior supervisory experience.

Rodriguez's reliance on Randle v. City of Aurora, 69 F.3d 441, 454 (10th Cir. 1995) is misplaced.  In Randle, the published qualifications for promotion were an associate's degree or other substitute experience.  Randle, 69 F.3d at 453-54.  The Randle plaintiff proffered evidence that the successful applicant was permitted to retain the promotion after it was discovered that she did not have an associate's degree even though the employer had certified that the plaintiff had the equivalent experience, thus raising a reasonable inference that the qualification was not genuine.  Id.  Unlike the Randle plaintiff, Rodriguez has not shown that he possessed the qualifications for promotion to supervisor as attested to by Adkinson, or that Johnson was not qualified for a supervisor position as a new hire. Instead, Rodriguez sets forth his qualifications as a former Fedex "truck driver, dispatcher, and . . . representative of FedEx's safety committee" with the ability to "operate a computer," while attesting that Jim Johnson could not operate a computer and had no previous supervisory experience.  Rodriguez has not proffered evidence that the ability to operate a computer or prior supervisory experience were Fedex qualifications for the position of supervisor; Rodriguez himself did not possess prior supervisory experience. Rodriguez has failed to proffer evidence that would permit a reasonable jury to conclude that completing the LAC course was not a bona fide prerequisite for promotion to a Fedex supervisor position absent unique circumstances.  See Adkinson Affidavit, ¶¶ 9, 11. Rodriguez's reliance on Dews v. A.B. Dick Co., 231 F.3d 1016 (6th Cir. 2000) is also misplaced because the record does not support a finding that Rodriguez did not know of the open supervisor positions, or that Fedex lacked a formal mechanism for expressing interest in a supervisor position.  Id. at 1022.

In sum, Rodriguez failed to proffer evidence that, had he applied for a supervisory

position, the application would have been rejected on the basis of his perceived Hispanic accent and speech pattern instead of his failure to complete the genuine LAC requirement as applied to all Fedex employees seeking a promotion. McEwen, 2006 WL 83476 at *10 (citing Teamsters, 431 U.S. 324). Rodriguez's expectation that his application might be rejected on the basis of his speech pattern and accent does not show that Rodriguez was otherwise qualified for a supervisory position. Id.; Teamsters, 431 U.S. at 369-370. Rodriguez himself attests that he was told by Adkinson that he "must take leadership courses . . . on his own time." It is undisputed that Rodriguez never completed the LAC courses. Rodriguez did not come forward with basic information about his own qualifications to be a supervisor other than that he "worked as a truck driver, dispatcher, and served as a representative of FedEx's safety committee" and could "operate a computer." Rodriguez thus failed to meet the albeit difficult burden of showing that he should be treated as if he applied for a supervisory position, and that he was rejected based on unlawful racial criteria. Teamsters, 431 U.S. at 369-70; Mitchell, 583 F.2d at 283; McEwen, 2006 WL 83476 at *10. Contrary to Rodriguez's argument, the existence of a consistently enforced discriminatory policy, without more, does not generate a presumption that a nonapplicant was a victim of unlawful discrimination. Teamsters, 431 U.S. at 369-70.

The court notes that, in Hazel, the Michigan Supreme Court held that an ELCRA plaintiff alleging an unlawful failure to promote is not required to provide evidence that he is at least as qualified as the successful promotion candidate in satisfaction of the third and forth elements of his prima facie case. Hazel, 464 Mich. at 470. In Hazel, unlike here, the ELCRA plaintiff formally applied for the vacant position of office manager, and element number two – an adverse employment action – was not in dispute. Hazel, 464 Mich. at 470. Further, although Rodriguez is not required to present evidence that he was at least

14

as qualified as the successful applicants to establish the third and fourth elements of a prima facie case, Rodriguez was required to present evidence that he himself was qualified for an open supervisory position. Hazel, 464 Mich. at 471-472. Rodriguez did not meet this evidentiary burden.

Construing the record evidence in a light most favorable to Rodriguez, Rodriguez failed to proffer sufficient evidence to show that he suffered the adverse employment action of being denied a promotion for which he presumably applied, that he was qualified for a supervisory position, or that a supervisory position was given to another person under circumstances giving rise to a reasonable inference of unlawful race discrimination. Hazel, 464 Mich. at 463; Redding, 241 F.3d at 532; Amway Distributors, 323 F.3d at 390.

Alternatively, and assuming Rodriguez proffered sufficient evidence of a prima facie failure to promote case, Rodriguez failed to proffer sufficient evidence to permit a reasonable juror to find that his failure to complete LAC courses was a pretext for race discrimination, and that unlawful race discrimination was a motivating factor for denying his promotion to supervisor. Hazel, 464 Mich. at 462-66. Redding, 241 F.3d at 532; Amway Distributors, 323 F.3d at 390. Fedex's Adkinson attested that: Rodriguez was not considered for promotion because he did not fulfil his LAC requirement despite encouragement from Fedex; Rodriguez did not possess unique characteristics warranting a waiver of the LAC requirement; Rodriguez was a driver which, in Fedex's general practice, was not eligible for direct promotion; Rodriguez was not considered for promotion due to his lack of commitment to the LAC; and Adkinson did not know that Rodriguez had even "interviewed" for a supervisory position with McKibbon. Adkinson's comments as attested to by McKibbon and Williams regarding Rodriguez's Hispanic accent, and Ravenille's reaction to Rodriguez's complaints as attested to by Rodriguez, are insufficient

to raise a legitimate inference that Fedex was motivated by racial discrimination in failing to promote Rodriguez to a supervisory position. Hazel, 464 Mich. at 462-66; Redding, 241 F.3d at 532; Amway Distributors, 323 F.3d at 390. Summary judgment under a McDonnell Douglas analysis is appropriate if, as here, the employee creates only a weak issue of fact as to whether the employer's proffered legitimate reasons are true, and there is abundant and uncontroverted independent evidence that no discrimination occurred. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000)).

### ii. Retaliation/Hostile Work Environment/Constructive Discharge

To establish a prima facie ELCRA claim of unlawful retaliation, a plaintiff must show that: (1) he engaged in activity protected by the ELCRA; (2) this activity was known by the defendant; (3) the defendant took an adverse employment action against the plaintiff; and (4) a causal connection between the protected activity and the adverse action. DeFlaviis v. Lord & Taylor, Inc., 223 Mich. App. 432, 436, 566 N.W.2d 661 (1997). To establish an actionable ELCRA hostile work environment claim, a plaintiff must show: (1) he belonged to a protected group; (2) he was subjected to unwelcome communications or conduct on the basis of his protected status; (3) the communications or conduct substantially interfered with his employment or created an intimidating, hostile, or offensive work environment; and (4) respondeat superior liability. Quinto v. Cross and Peters Co., 451 Mich. 358, 319-20, 547 N.W.2d 314 (1996). To survive a motion for summary judgment as to a hostile work environment claim, the plaintiff must present evidence that would allow a reasonable person to find that working conditions under the totality of the circumstances were severe or pervasive. Id. at 369. Constructive discharge requires proof that the employer made an employee's working conditions so intolerable that a reasonable person in the employee's shoes would have felt compelled to resign. Mollett v. City of Taylor, 197 Mich. App. 328,

336, 494 N.W.2d 832 (1993) (quoting Mourad v. Auto Club Ins. Ass'n, 186 Mich. App. 715, 721, 465 N.W.2d 395 (1991)).

Rodriguez failed to proffer evidence that would permit a reasonable jury to conclude that Fedex gave a supervisory position to an unnamed "White new hire off the streets" or Jim Johnson in retaliation for Rodriguez's complaints of race discrimination, that racially discriminatory communications and conduct were so severe or pervasive at Fedex as to create an objectively racially hostile work environment, or that Rodriguez's working conditions were so objectively intolerable as to compel his resignation. Fedex was entitled to summary judgment of Rodriguez's claims of retaliation, hostile working environment, and constructive discharge as a matter of law. DeFlaviis, 223 Mich. App. at 436; Quinto, 451 Mich. at 319-20; Mollett, 197 Mich. App. at 336; Redding, 241 F.3d at 532; Amway Distributors, 323 F.3d at 390.

## IV. Conclusion

On de novo review, and for the reasons set forth above, the Bankruptcy Court's December 1, 2005 Opinion granting summary judgment in favor of Fedex and dismissing Rodriguez's claims is hereby AFFIRMED to the extent consistent with the analysis herein.

SO ORDERED.

                                                s/George Caram Steeh
                                                GEORGE CARAM STEEH
                                                UNITED STATES DISTRICT JUDGE

Dated: May 30, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on May 30, 2006, by electronic and/or ordinary mail.

                                                   s/Josephine Chaffee
                                                   Secretary/Deputy Clerk